**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FADEEL SHUHAIBER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:17-cv-05331 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| THOMAS W. DEC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Fadeel Shuhaiber brings this civil-rights lawsuit, 42 U.S.C. § 1983, alleging that Cook County Jail officers and paramedics provided inadequate medical care when he was detained in the Jail.[1] R. 44, Third Am. Compl. ¶¶ 1–9. When he filed the initial complaint, Shuhaiber listed the defendants as "John Doe" Defendants, because he did not know the identities of the officers and paramedics. R. 1. He later amended the complaint three times in order to name the proper parties to the suit. *See* R. 19, 33, 44. The Defendants now move to dismiss the Third Amended Complaint, arguing that it was filed too late under the applicable statute of limitations. R. 47. The statute of limitations is an affirmative defense that typically does not need to be pled around, but in this particular case, the limitations issue can be decided at the pleading stage. For the reasons explained more fully below, the motion to dismiss is granted.

---

[1]The Court has federal-question jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

# I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the Third Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the relevant time, Shuhaiber was a detainee in Cook County Jail. Third Am. Compl. ¶ 3.[2] In mid-October 2016, Shuhaiber and another detainee got into a fight. *Id.* ¶ 12. As a result, Shuhaiber suffered injuries to his leg and arm, which caused severe pain, required physical therapy, and occasionally confined Shuhaiber to a wheelchair. *Id.* ¶¶ 12-13. The following year, in mid-May 2017, a different detainee struck Shuhaiber in the face, causing him to fall over a chair and onto the floor. *Id.* ¶¶ 16-17. Because the previous injuries had not completely healed, Shuhaiber could not stand on his own and remained lying on the floor. *Id.* ¶¶ 17-18, 21. Meanwhile, an officer restrained the other inmate and called for help. *Id.* ¶ 18-19.

A paramedic responded to the call, but according to Shuhaiber, the paramedic's examination was "superficial," as it did not include any follow-up evaluation or any review of his medical condition as a diabetic. Third Am.Compl. ¶¶ 20, 22. Despite Shuhaiber's inability to stand up or walk without the help of several other officers, the paramedic "cleared" him to return to his cell. *Id.* ¶¶ 22-23. None of the Jail staff followed up with Shuhaiber, and none of the medical staff administered the insulin necessary to treat his diabetic condition. *Id.* ¶¶ 24-25. Around 31 hours after the assault, prison staff found Shuhaiber unresponsive on the floor of his cell, having fallen

---

[2]There is a bit of confusion in the Third Amended Complaint, which alleges that Shuhaiber was incarcerated at Stateville Correctional Center at the relevant time. Third Am. Compl. ¶ 3. But his response brief makes clear that he was detained in the Cook County Jail at the time, R. 54 at 1, which makes sense because he has sued Cook County Jail employees.

2

down, Shuhaiber alleges, from the lack of proper treatment. *Id.* ¶ 27. The fall caused Shuhaiber to suffer a blunt head trauma. *Id.* ¶ 26.

Two months later, on July 19, 2017, Shuhaiber filed this case *pro se* against Sheriff Tom Dart, Director Olsen, "ADA Sabrina," and various "John Doe" officers, paramedics, and doctors. R. 1. In December 2017, the Court dismissed the complaint as against the named defendants, but held that the complaint adequately stated a claim against the unknown defendants. R. 10. The following year, in July 2018, Shuhaiber filed the First Amended Complaint, naming Sheriff Tom Dart and six John and Jane Does as defendants. R. 19. A few months later, in October 2018, Shuhaiber filed the Second Amended Complaint to add Cook County as a defendant. R. 33. Finally, the next year, on August 2, 2019, Shuhaiber filed the Third Amended Complaint to name specific individual defendants rather than John Does. R. 44. Given the two-year statute of limitations that applies to Shuhaiber's claims, the Defendants have moved to dismiss the Third Amended Complaint.

## II. Standard of Review

Although the Defendants style their motion as invoking Rule 12(b)(6), in reality it seeks judgment on the pleadings. The statute of limitations is an *affirmative* defense, and "plaintiffs need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Indeed, the Seventh Circuit has noted that dismissal under Rule 12(b)(6) on the basis of the statute of limitations is "irregular," because Rule 12(b)(6) tests the adequacy of the legal claim, not its timeliness. *United States v. Northern Trust Co.*, 372 F.3d 886,

3

888 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c)). Nevertheless, when the allegations of the complaint itself reveal that the case is barred by the statute of limitations, dismissal might be appropriate. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010) ("[I]f it is plain from the complaint that the [statute of limitations] defense is indeed a bar to the suit dismissal is proper without further pleading."). So long as no discovery is needed to fill-in factual gaps, a dismissal on statute of limitations grounds can be properly granted as, in effect, a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)).

### III. Analysis

On its face, the Third Amended Complaint does reflect a statute of limitations problem: Shuhaiber filed it in August 2019, which is more than two years after the May 2017 accrual of the claims against the Defendants. In Illinois, Section 1983 civil-rights claims for personal injuries, like the claims in this case, are governed by a two-year statute of limitations. *See Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009) (citing 735 ILCS 5/13-202). The Third Amended Complaint is the first one actually identifying the Defendants by name, so they argue that the operative complaint against them was filed too late. In response, Shuhaiber contends that the Third Amended Complaint ought to relate back to the filing date of the initial Complaint under Federal Rule of Civil Procedure 15(c)(1)(C).

4

**A. Relation Back**

Shuhaiber's relation-back argument relies on a rule that gives, under certain circumstances, a later-filed complaint the benefit of an earlier-filing date if there was a "mistake" as to the proper defendant's identity in the original complaint:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > (ii) knew or should have known that the action would have been brought against it, but for a *mistake* concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). As the text of the rule reflects, a plaintiff seeking to take advantage of relation back first must satisfy another subparagraph, specifically, Rule 15(c)(1)(B). That rule requires that the later-filed complaint assert conduct that arises out of the same "conduct, transaction, or occurrence set out" in the initial Complaint. Fed. R. Civ. 15(c)(1)(B). Here, the defense does not dispute that the Third Amended Complaint does just that: the claims in it arise out of the same allegedly inadequate medical care set out in the initial Complaint.

But the defense does dispute that the Defendants received notice of the action on time, Fed. R. Civ. P. 15(c)(1)(C)(i), and also disputes that Shuhaiber's lack of knowledge as to the Defendants' identities qualifies as a "mistake," Fed. R. Civ. P. 15(c)(1)(C)(ii). To answer the first question—whether the Defendants had notice of

5

the suit within 90 days of the filing of the Third Amended Complaint—would require discovery and factual development that has not yet happened. As it turns out, however, discovery is not needed, because the answer to the *second* question is that the defense is right: as a matter of law, Shuhaiber's lack of knowledge as to the identity of the Defendants was not a "mistake" under the Civil Rules.

Remember that the pertinent requirement is that the new defendant "knew or should have known that the action would have been brought against it, but for a *mistake concerning the proper party's identity*." Fed. R. Civ. P. 15(c)(1)(C)(ii) (emphasis added). Was Shuhaiber's lack of knowledge of the proper party's identity a "mistake" concerning that person's identity? In support of answering yes, Shuhaiber cites a 2010 Supreme Court case, *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010). In *Krupski*, a passenger tripped over a cable and fractured her leg while on board a cruise ship owned and operated by Costa Crociere S.p.A. *Id.* at 541-42. The passenger filed a lawsuit, but initially named "Costa Cruise Lines" as the defendant. *Id.* at 543. Costa Cruise Lines, however, was merely the North American sales and marketing agent for Costa Crociere, an Italian corporation. *Id.* By the time the passenger sued and served Costa Crociere as the proper defendant in an amended complaint, the statute of limitations had expired. *Id.* at 544-45. The district court dismissed the amended complaint as untimely, and the court of appeals affirmed. *Id.* at 546. The appellate court reasoned that the passenger either knew or should have known the identity of the correct defendant, so the court deemed the passenger to

6

have *deliberately* chosen to sue Costa Cruises Lines. Thus, no "mistake" had been committed as required by Rule 15(c)(1)(C)(ii).

The Supreme Court held, however, that the amended complaint could relate back to the date of the original complaint. *Id.* at 548. Based on the text of the Rule, the relevant question was not what the *plaintiff* knew or should have known about the proper defendant's identity—the question is what the *defendant* knew or should have known. *Id.* "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Id.* (emphasis in original). Having said that, the Supreme Court did acknowledge that what the *plaintiff* knew is relevant "if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* (emphasis added). But just because the passenger knew of both Costa entities before filing the lawsuit did not necessarily mean that she did not make a "mistake" in initially suing Costa Cruise Lines. *Id.* at 548-49. She still misunderstood the roles that each entity played in the accident, and that qualifies as a "mistake." *Id.* at 549. So relation back could apply even if the plaintiff knew about both Costa entities before filing the lawsuit. *Id.*

The problem with applying *Krupski*'s holding to Shuhaiber's case is that he did not know the identity of the proper defendants *at all*. Unlike the plaintiff in *Krupski*, Shuhaiber did not misunderstand the roles of the John Doe Defendants—he simply did not know what their names were. So far, the Seventh Circuit has not decided whether suing John Doe Defendants qualifies as a "mistake" under Rule

7

15(c)(1)(C)(ii). The district courts in this District have come to different conclusions on this issue. *Cheatham v. City of Chicago*, 2016 WL 6217091, at *3 (N.D. Ill. Oct. 25, 2016) (qualifies as a mistake); *Vandenburgh v. Bannockburn Police Officer Robert Ogden*, 2016 WL 403663, at *3 (N.D. Ill. Feb. 3, 2016) (does not qualify as a mistake); *White v. City of Chicago*, 2016 WL 4270152, at *18 (N.D. Ill. Aug. 15, 2016) (qualifies as a mistake). If anything, there is a "recent trend in this District [] for courts to apply *Krupski* to [John Doe] cases." *Bilik v. Hardy*, 2019 WL 4735394, at *4 (N.D. Ill. Sep. 27, 2019); *see also Paulsen v. Abbott Laboratories*, 368 F.Supp.3d 1152, 1169 (N.D. Ill. 2019).

Outside of this District, however, every federal Circuit that has decided this issue has decided not to extend *Krupski* to suits in which John Doe Defendants are sued as the stand-in for the later-named defendants. *See, e.g.*, *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019); *Heglund v. Aitkin Cty.*, 871 F.3d 572, 579-80 (8th Cir. 2017); *Butler v. National Community Renaissance of California*, 766 F.3d 1191, 1203-04 (9th Cir. 2014); *Brown v. Cuyahoga Cty., Ohio*, 517 Fed. Appx. 431, 433-34 (6th Cir. Mar. 15, 2013) (unpublished opinion). For example, in *Heglund*, the Eighth Circuit relied on dictionary definitions of the word "mistake" to conclude that naming a John Doe Defendant is not a mistake, because that word most often suggests "an *unintentional error* through lack of understanding." *Heglund*, 871 F.3d at 579-80 (emphasis added). *Heglund* pointed out that *Krupski* itself relied on dictionary definitions that, for the most part, suggested that a "mistake" is an *unintentionally wrong* action:

> The Court defined mistake as "[a]n error, misconception, or misunderstanding; an erroneous belief." *Id.* at 548 (quoting BLACK'S LAW DICTIONARY

8

> 1092 (9th ed. 2009)). It also described a mistake as "a misunderstanding of the meaning or implication of something"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts." *Id.* at 548-49 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1446 (2002)).

871 F.3d at 579 (quoting and citing *Krupski*, 560 U.S. at 548-59). Because only unintentional actions can qualify as a "mistake," and suing a John Doe Defendant is "not the result of a misunderstanding or misconception," a plaintiff cannot be said to have made a "mistake" in suing John Doe Defendants. *Id.* at 580. So relation back is not available for amended complaints that replace John Doe Defendants with the actual names of the defendants. *Id.* at 581.

This interpretation of the word "mistake" is the most faithful textual reading of the term. The dictionary definitions cited in *Krupski* and *Heglund* do establish that, first and foremost, a mistake is something that is *wrong*: an "error, misconception, or misunderstanding," or put another way, "a wrong action or statement," *Krupski*, 560 U.S. at 548. When a plaintiff does not know the name of the proper defendant, the plaintiff does not commit an "error"—the plaintiff is not "wrong"—when the plaintiff lists John Doe Defendant as the stand-in party. Indeed, that is the right thing to do when the defendant's identity is not known. This is the plain meaning of how the word is used in ordinary situations. Consider this: a baseball aficionado tests another fan's knowledge by asking, "Who won the World Series in 2009?", and the second responds, "I don't know." The questioner could not fairly reply, "Well, you just made a *mistake*." That would not make sense. If the response had been the Boston Red Sox (or any team other than the New York Yankees), *then* the questioner could fairly

9

reply, "No, you just made a mistake—it was the Yankees." The bottom line is that the plain and ordinary meaning of the word "mistake" does not describe what a plaintiff does when the plaintiff correctly sues John Doe Defendants in a complaint when the identity of the proper defendants is not yet known. And there are no other textual or contextual clues in Rule 15 that point to a specialized meaning of "mistake" for the Rule.

It is true that, as noted earlier, some decisions have applied *Krupski* to suits against John Doe Defendants. In doing so, the decisions primarily highlight one particular aspect of one of the dictionary definitions of "mistake" cited in *Krupski*. Specifically, Webster's Third New International Dictionary defines "mistakes" as "a wrong action or statement proceeding from faulty judgment, *inadequate knowledge*, or inattention." *Krupski*, 560 U.S. at 548-49 (emphasis added). The decisions that apply *Krupski* to John Doe Defendants point out that action taken out of "inadequate knowledge" is part of the definition, and that is what plaintiffs in the dark are doing when they sue John Doe Defendants—acting out of "inadequate knowledge." *E.g.*, *White v. City of Chicago*, 2016 WL 4270152, at *16 (N.D. Ill. Aug. 15, 2016); *see also Haroon v. Talbott*, 2017 WL 4280980, at *6 (N.D. Ill. Sep. 27, 2017). The problem with this reasoning is that it divorces "inadequate knowledge" from the rest of the dictionary definition. The subject of the definition is "a *wrong* action or statement." *Krupski*, 560 U.S. at 548 (emphasis added) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1446 (2002)). As explained earlier, it simply is not "wrong" for a plaintiff who does not know the identity of the proper defendant to sue a John Doe Defendant

10

as the stand-in. Suing a John Doe Defendant "*accurately* convey[s]" that the plaintiff does not know the defendant's identity. *Heglund*, 871 F.3d at 580 (emphasis added).

It is also true, as the decisions that apply *Krupski* to John Doe Defendants point out, that *Krupski* does instruct that the relevant question is the *defendant*'s knowledge about whether the action would have been brought against the defendant but for a mistake about identity. 560 U.S. at 548. After all, that is what the text of Rule 15(c)(1)(C)(ii) demands. But if naming a John Doe Defendant is by definition not a "mistake," then necessarily Rule 15(c)(1)(C)(ii) cannot be satisfied, because the defendant—as a matter of law—cannot have known that the plaintiff made a mistake by suing a John Doe Defendant. Viewing the complaint's targeting of a John Doe Defendant from the perspective of the defendant does not change anything.

No doubt that there are sound policy reasons to allow an amended complaint to relate back to an original complaint naming John Doe Defendants, especially if the proper defendants know that they would have been sued but for the plaintiff's lack of knowledge. If the defendants would not otherwise be prejudiced, then there ought to be a strong preference for resolving suits on their merits, rather than on a statute of limitations. But this policy-making rationale cannot override the plain meaning of the Rule's text. Indeed, it appears that the Civil Rules Advisory Committee considered—but rejected—adding "lack of information" to Rule 15(c) as a basis for relation back. Specifically, in 2006, the Committee considered "whether to expand the concept

11

of 'mistake' by adding 'or lack of information.'" Minutes of the Civil Rules Advisory Committee at 26 (May 2006).³ The Committee described the problem this way:

> "[M]istake" is read to cover only a claimant who erroneously believes that the right defendant has been identified. If the claimant knows that it cannot identify the proper defendant, there is no "mistake," but only ignorance. This interpretation could easily be changed by adding four words: "mistake <u>or lack of information</u>."

*Id.* at 24-25 (underlining in original). So the Committee's interpretation of "mistake" did *not* include the naming of John Doe Defendants. On the plus side of adding "lack of information," the Committee noted that aiding plaintiffs who sue unknown police officers "seems attractive in this setting." *Id.* at 26. But the Committee also acknowledged the possibility of "broad intrusions on limitations periods." *Id.* Ultimately, the Committee decided that the "balance between difficulty and need seems close," so it decided to cease consideration of the amendment. *Id.* at 26-27.

Given this prior consideration of the policy balance, there is all the more reason to stick with the plain meaning of the Rule and leave it to rule-makers to consider the issue. *See Heglund*, 871 F.3d at 581 ("There may well be sound policy arguments for permitting relation back when a plaintiff amends a John Doe pleading … . But we think these concerns are best directed to the rulemakers, because it would unduly strain the plain language of the present rule to say that Rule 15(c) encompasses the [plaintiff's] amendment.").

---

³Available at https://www.uscourts.gov/rules-policies/archives/meeting-minutes/advisory-committee-rules-civil-procedure-may-2006.

**B. Equitable Tolling**

One final point is worth addressing: Shuhaiber's response brief makes a nod at the possibility of equitable tolling as a way around the statute of limitations problem. Pl.'s Resp. at 6. Equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before … . He might have been injured and known he was injured … yet have been unable despite all reasonable diligence to learn that he had been injured by a wrongful act or to learn the wrongdoer's identity." *Singletary v. Continental Illinois Nat. Bank & Trust Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993). Shuhaiber *seems* to invoke this doctrine by arguing that the Defendants had "exclusive control" over the information that he needed to identify the individual defendants. Pl.'s Resp. at 6. Because the Defendants delayed providing this necessary information until after the statute of limitations had expired, Shuhaiber could not have amended his complaint on time. *Id.*

But Shuhaiber only "seems" to invoke equitable tolling because he does not actually explicitly say that he is relying on the doctrine: the term "equitable tolling" does not appear in the response brief. What's more, the response brief does not cite any cases involving equitable tolling; does not set forth the standard for equitable tolling; and does not address whether he was reasonably diligent in attempting to

13

identify the defendants. So he has not adequately developed the argument, and has forfeited it.

## IV. Conclusion

For the reasons discussed above, the Defendants' motion for judgment based on the statute of limitations is granted. The status hearing set for November 20, 2020 is vacated. Final judgment shall be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 17, 2020

14